972 F.2d 352
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
David J. TEMPLETON and Rachel Templeton, Michael Venegoni,
Trustee, Defendants-Appellants.
 Nos. 91-2032, 91-2327.
 United States Court of Appeals, Seventh Circuit.
 Submitted July 22, 1992.*
Decided Aug. 10, 1992.
Rehearing Denied Aug. 31, 1992.
Rehearing and Suggestion for Rehearing En Banc
Denied Sept. 22, 1992.
 
 Before EASTERBROOK, and KANNE, Circuit Judges, and WOOD, Jr., Senior Circuit Judge.
 
 ORDER
 
 1
 The district court granted the United States' motion for summary judgment, ordering that the Government may foreclose on a piece of property fraudulently placed in a trust to defraud creditors while still equitably held by the Templetons. On this consolidated appeal, the Templetons and the trustee, Michael Venegoni, raise several challenges to the district court's decision. Our review of the briefs and the record leads us to conclude that the district court carefully considered all challenges when granting judgment to the United States. We affirm for the reasons stated in the district court's thorough opinion, which is attached.
 
 
 2
 AFFIRMED.
 
 ATTACHMENT
 UNITED STATES DISTRICT COURT
 NORTHERN DISTRICT OF INDIANA
 SOUTH BEND DIVISION
 
 3
 UNITED STATES OF AMERICA, Plaintiff,
 
 
 4
 vs.
 
 
 5
 DAVID JAMES TEMPLETON, et al., Defendants.
 
 CAUSE NO. S89-181 (RLM)
 MEMORANDUM AND ORDER
 
 6
 This action concerns the ownership of certain real property located at 718 Pontiac Street, Rochester, Indiana ("the Rochester property"). The United States contends that the Rochester property is owned by two individuals, defendants Rachel and David Templeton, who owe taxes, penalties, and interest to the United States and that the Internal Revenue Service should be permitted to foreclose on the Rochester property to satisfy those tax debts. All defendants challenge the government's ability to make the tax assessment against the Templetons and to use the Rochester property to satisfy any judgment against those defendants.
 
 
 7
 This cause is now before the court on both dispositive and procedural motions. These matters have been fully briefed and are ripe for ruling by this court.
 
 Factual Background
 
 8
 David and Rachel Templeton received title to the Rochester property in November, 1967. In November, 1982, the Templetons executed a trust agreement for the transfer of the Rochester property to the Seven Eighteen Trust ("the Trust"). Following the Templetons' alleged transfer of the Rochester property, they continued to reside at that property and remained liable for utility bills of that property. In fact, the Rochester property's address is the Templetons' address of record in this action. The record does not reveal that the Templetons owned any other real estate for either business or personal use at the time of the execution of the trust agreement or the IRS's tax assessment.[1]
 
 
 9
 The trust agreement for transfer of the Rochester property denotes consideration in the amount of one dollar and "other valuable consideration". As it appears in this court's record, the trust agreement is two pages in length and names no beneficiaries to the Trust.[2] The original named trustees of the Trust were Peter W. Terpstra, Sr., Victor D. McMahan, and Max E. Beer, all named defendants in this action. Mr. Terpstra, Mr. Beer, and Mr. McMahan are all members of an organization known as the Patriots for Liberty[3], of which Rachel Templeton is also a member. Defendant Michael Venegoni[4] has replaced Mr. Beer as a trustee of the Trust.
 
 
 10
 On April 15, 1980, David and Rachel Templeton timely filed their 1979 federal income tax return with the Internal Revenue Service. Four years later, the IRS made an assessment against the Templetons for the 1979 tax year in the amount of $43,792.72 in taxes, $2,189.64 in negligence penalties, and $28,789.69 in interest. The Templetons have refused to pay this assessment. As of March 3, 1989, the unpaid balance of the IRS's tax assessment against the Templetons on their 1979 return was $73,034.10.
 
 The Parties' Positions
 
 11
 The United States has moved for summary judgment against all defendants. The government seeks to reduce those tax assessments against defendants David and Rachel Templeton to judgment and to foreclose on the Rochester property. The United States also asks this court to determine that the Templetons are the legal owners of the Rochester property because their transfer of that real estate to the Trust was void, either because no valid trust was created or because the transfer was a fraudulent conveyance.
 
 
 12
 In support of its summary judgment motion, the United States has submitted the declaration of IRS Revenue Officer Thomas Forsgren; a Form 4340 certificate of assessments and payments for David and Rachel Templeton; a copy of the warranty deed transferring the Rochester property to the Templetons in November, 1967; a copy of the warranty deed (allegedly) transferring the Rochester property to the Trust in November, 1982; a copy of the trust agreement for the Trust; and a copy of a billing record for utilities provided to the Rochester property.
 
 
 13
 The Templetons have several responses to the government's summary judgment motion. First, they contend that the IRS has failed to prove sufficiently that an assessment was made against them for the 1979 tax year and, therefore, the tax liens attached to the Rochester property should be voided. Specifically, the Templetons argue that the Form 4340 submitted as evidence of the April, 1984 assessment is a computer-generated document that is insufficient proof of an assessment.
 
 
 14
 Relying on this same position, the Templetons seek to dismiss the government's complaint for failure to make an assessment against them. The Templetons also move to strike the Form 4340 from the record, to strike the affidavit of IRS Officer Forsgren, and for a more definite statement and/or a motion to strike portions of the government's brief in support of its motion for summary judgment.
 
 
 15
 In further response, the Templetons allege that the Trust was a valid trust under Indiana law. In support of their responses, the Templetons submitted their own affidavits[5] and various documents outlining the IRS's procedures in making assessments for delinquent taxes.
 
 
 16
 Trustee Michael Venegoni has responded to the government's motion with essentially the same positions asserted by the Templetons and also makes two additional responses: (1) this court has no jurisdiction to void a contract made in Indiana, and (2) this action was commenced more than six years after execution of the Trust and, therefore, is barred by Indiana's statute of limitations for challenging a transfer of real property. Mr. Venegoni submits the affidavits of Max Beer, Peter Terpstra, Sr., and Victor McMahan in response to the government's motion.[6]
 
 
 17
 Mr. Venegoni also seeks dismissal of the complaint for want of jurisdiction and on statute of limitations grounds. The court has stayed briefing of these motions pending ruling on the government's motion for summary judgment. The determinations in this memorandum and order, however, indicate that Mr. Venegoni's motions should be denied.
 
 
 18
 The Templetons' Motions to Dismiss and Procedural Motions
 
 
 19
 The Templetons have filed three procedural motions and a motion to dismiss the complaint based on theories discussed in those procedural motions. The Templetons initially moved to strike the Form 4340 certificate of assessments and to dismiss the complaint for failure of the IRS to validate the alleged assessment. Neither motion is well-taken.
 
 
 20
 The Templetons suggest that the government must produce the original Form 23C assessment to prove that the IRS assessed tax penalties against them in April, 1984. They contend that the IRS never made such an assessment and that they never received notice of that action.
 
 
 21
 Several courts have held that a Form 4340 submission is sufficient evidence of the making of an assessment to establish the government's prima facie case of tax liability. United States v. Chila, 871 F.2d 1015 (11th Cir.), cert. denied, 110 S.Ct. 498 (1989); United States v. Dixon, 672 F.Supp. 503, 506 (M.D.Ala.1987); G.M. Leasing Corp. v. United States, 514 F.2d 935, 941 (10th Cir.1975), rev'd on other grounds, 429 U.S. 338 (1977). Once the IRS has shown evidence of an assessment, the burden shifts to the taxpayer to refute the validity of the tax liability. Helvering v. Taylor, 293 U.S. 507, 515 (1935); Calderone v. United States, 799 F.2d 254, 258 (6th Cir.1986); Anastasato v. Commissioner, 794 F.2d 884, 886 (3rd Cir.1986); Avco Delta Corp. v. United States, 540 F.2d 258 (7th Cir.1976), cert. denied, 429 U.S. 1040 (1977).
 
 
 22
 Apart from their own conclusions, the Templetons have come forward with neither evidence nor legal authority to challenge the validity of the Form 4340 certificate. Moreover, in response to the Templetons' motions, the government submitted further documentation of the assessment in question, including the Form 23C, which the Templetons admit is the proper documentation of an assessment, and a copy of the notice of tax assessment mailed to the Templetons at the Rochester property on April 25, 1984. The Templetons have not responded to this additional documentation.
 
 
 23
 Based on sufficient evidence in the record demonstrating that a tax assessment was issued against the Templetons on April 25, 1984, the court must deny the Templetons' motion to dismiss and motion to strike Form 4340.
 
 
 24
 The Templetons move to strike Officer Forsgren's declaration in support of the government's summary judgment motion on the grounds that the document is "insufficient", "immaterial, impertinent and scandalous". Quite generally, the Templetons' motion to strike the declaration of Officer Forsgren is based on the assertion that the IRS made no tax assessment against the Templetons in April, 1984. The Templetons further fault Officer Forsgren's declaration for asserting statements which these defendants challenge in response to summary judgment.
 
 
 25
 However, the mere fact that the Templetons disagree with Officer Forsgren's statements does not warrant striking those statements from the record. Officer Forsgren's affidavit adequately states the basis for his knowledge. Moreover, Officer Forsgren, as an IRS representative with knowledge of the Templetons' tax filings, has information pertinent to these proceedings. The Templetons properly may disagree with Officer Forsgren's conclusions, but the mere existence of that dispute does not support a motion to strike under Federal Rule of Civil Procedure 12(f). Accordingly, the Templetons' motion to strike Officer Forsgren's declaration will be denied.
 
 
 26
 The Templetons finally move for a more definite statement and/or to strike certain portions of the memorandum in support of the government's motion for summary judgment. The section in question asks this court to determine that "the Templetons are the legal owners of the property because the transfer was void because no valid trust was created or, alternatively, that it was void because it was a fraudulent conveyance." In requesting this relief, the government points out in a footnote that the complaint in this case does not explicitly ask for such a determination, but asks that the court conform the original pleadings to the relief sought on summary judgment.
 
 
 27
 The Templetons ask this court to strike a portion of the government's brief which merely sets forth the full nature of relief sought in this action. The Templetons plainly understand the requested relief, as they have responded asserting the validity of the trust agreement and questioning the government's claim of fraud. A more definite statement of the government's position is unnecessary.
 
 
 28
 The court does not have before it a motion to amend the pleadings with the above statement and, accordingly, will not grant such relief. However, the mere fact that the government has sought to clarify the nature of relief sought on summary judgment presents no cause to strike that discussion. The Templetons present no grounds for relief under Federal Rules of Civil Procedure 12(f).
 
 Mr. Venegoni's Jurisdictional Challenges
 
 29
 In response to the government's motion for summary judgment, Mr. Venegoni raises the same issues as in his motions to dismiss. First, he argues that the court lacks jurisdiction "to void a contract made within the territorial jurisdiction of the State of Indiana", citing Article 1, Section 10 of the United States Constitution, the Tenth Amendment to the United States Constitution, and Article I, Section 24 of the Indiana Constitution. Mr. Venegoni argues that the governments of the separate states may not interfere with individuals' obligations in contracts and, accordingly, the federal government is prohibited from such interference pursuant to the Tenth Amendment. Mr. Venegoni's assertions find no basis in federal or state law.
 
 
 30
 Both state and federal courts have been called upon to determine the meaning or enforceability of contracts between individual parties in Indiana. Sheldon v. Munford, Inc., 660 F.Supp. 130 (N.D.Ind.1987); Barnes Group, Inc. v. O'Brien, 591 F.Supp. 454 (N.D.Ind.1984); Neterer v. Slabaugh, 548 N.E.2d 832 (Ind.App.1990); Fields v. Cummins Employees Federal Credit Union, 540 N.E.2d 631 (Ind.App.1989); Bochnowski v. Peoples Federal Savings & Loan Ass'n, 530 N.E.2d 125 (Ind.App.1988). In these cases, the court's role was to assist the parties in carrying out the contractual provisions (or determining whether in fact a contract exists) and not to interfere with such parties' constitutional right to contract. TKO Equipment Co. v. C & G Coal Co., Inc., 863 F.2d 541 (7th Cir.1988); Caporale v. Mar Les, Inc., 656 F.2d 242 (7th Cir.1981); Ford Motor Credit Co. v. Garner, 688 F.Supp. 435 (N.D.Ind.1988).
 
 
 31
 Mr. Venegoni's interpretation of the Tenth Amendment and Article I of the Constitution has not been adopted by the federal and state judiciaries. The claim that this court lacks jurisdiction has no basis in law.
 
 
 32
 Mr. Venegoni also asserts that the Indiana statute of limitations on actions alleging fraud bars the government's complaint. IND.CODE 34-1-2-1(1). Federal courts apply state substantive law in actions to set aside a fraudulent conveyance and foreclose on a federal tax lien, Commissioner v. Stern, 357 U.S. 39, 42-45 (1958), but do not apply the state's statute of limitations, United States v. Fernon, 640 F.2d 609 (5th Cir.1981). Accordingly, Indiana's statute of limitations presents no bar to this action.
 
 
 33
 The court will address the remainder of Mr. Venegoni's positions on summary judgment along with those similarly raised by the Templetons.
 
 Standard of Review on Summary Judgment
 
 34
 A party seeking summary judgment must demonstrate that no genuine issue of fact exists for trial and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Certain Underwriters of Lloyd's v. General Accident Ins. Co. of America, 909 F.2d 228, 231 (7th Cir.1990). If that showing is made and the motion's opponent would bear the burden at trial on the matter that forms the basis of the motion, the opponent must come forth with evidence to show what facts are in actual dispute. Lujan v. National Wildlife Federation, 110 S.Ct. 3177, 3186 (1990); Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Sims v. Mulcahy, 902 F.2d 524, 540 (7th Cir.), cert. denied, 111 S.Ct. 249 (1990). If he fails to do so, summary judgment is proper. Fitzpatrick v. Catholic Bishop of Chicago, 916 F.2d 1254, 1256 (7th Cir.1990); Tatalovich v. City of Superior, 904 F.2d 1135, 1142 (7th Cir.1990). A genuine factual issue exists only when there is sufficient evidence for a jury to return a verdict for the motion's opponent. Harbor House Condominium Ass'n v. Massachusetts Bay Ins. Co., 915 F.2d 316, 320 (7th Cir.1990); Hines v. British Steel Corp., 907 F.2d 726, 728 (7th Cir.1990). Summary judgment should be granted if no reasonable jury could return a verdict for the motion's opponent. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Shager v. Upjohn Co., 913 F.2d 398 (7th Cir.1990).
 
 
 35
 The parties cannot rest on mere allegations in the pleadings, Bay State Milling Co. v. Martin, 916 F.2d 1221, 1225 (7th Cir.1990), or upon conclusory allegations in affidavits. Mestayer v. Wisconsin Physicians Service Ins. Corp., 905 F.2d 1077, 1079 (7th Cir.1990). The court must draw any permissible inferences from the materials before it in favor of the non-moving party, Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574 (1986); Illinois Bell Telephone Co. v. Hanes and Co., Inc., 905 F.2d 1081, 1087 (7th Cir.1990), as long as the inferences are reasonable. Renovitch v. Kaufman, 905 F.2d 1040, 1044 (7th Cir.1990). The non-moving party must show that the disputed fact is material, or outcome-determinative, under applicable law. Johnson v. Pelker, 891 F.2d 136, 138 (7th Cir.1989).
 
 
 36
 Even on an issue of intent, summary judgment is proper if the party with the burden at trial presents no indication of the necessary motive or intent. Illinois Bell Telephone Co., 905 F.2d at 1087; Holland v. Jefferson Nat'l Life Ins. Co., 883 F.2d 1307 (7th Cir.1989).
 
 
 37
 The court will address the government's motion with the above standards in mind. Discussion must focus on whether the Templetons are the owners of the Rochester property. As discussed above, the United States made a tax assessment against the Templetons on April 25, 1984. The Templetons have not refuted the presumption that such an assessment is valid. Accordingly, the sole remaining issue is whether the government properly may place a tax lien on the Rochester property, an issue the court resolves in favor of the IRS.
 
 
 38
 The IRS's Summary Judgment Motion and the Defendants' Responses
 
 
 39
 The United States argues that the Templetons are the equitable owners of the Rochester property and, therefore, the real estate should be used to satisfy their tax liability. The government asserts two positions in support of this theory. First, the Templetons' transfer of the Rochester property in trust was not valid under the laws of Indiana. The government contends that the Templetons failed to satisfy all necessary ingredients to establish a valid trust with respect to the Trust. Specifically, the government notes that the trust agreement fails to either name the Trust's beneficiaries or demonstrate that valuable consideration was given in the transfer of the Rochester property to the Trust.
 
 
 40
 The government further asserts that even if the trust agreement was valid when executed, the transfer of the Rochester property to that Trust was a fraudulent conveyance. The United States points out that the Templetons continued to reside at the Rochester property (and continue to do so today) and never received any consideration for their relinquishment of that property to the Trust. Asserting principles of Indiana law, the government argues that the court should set aside the Templetons' conveyance of the Rochester property.
 
 
 41
 In response to the summary judgment motion, the Templetons and Mr. Venegoni argue that the trust agreement was properly created under Indiana law. They contend that the agreement was executed for valuable consideration and that beneficiaries were named in the original agreement. The defendants further argue that the Templetons have not acted as the owners of the Rochester property since the conveyance to the Trust. They also suggest that there is no evidence of fraud in the conveyance of that property.
 
 
 42
 The fundamental characteristics that distinguish a trust from other legal relationships are the existence of a fiduciary relationship and the holding of title to property by one person for the benefit of another. Snouffer v. Peoples Trust and Savings Co., 140 Ind.App. 491, 212 N.E.2d 165 (1966); Tait v. Anderson Banking Company, 171 F.Supp. 3 (S.D.Ind.1959); In re Trusteeship of Creech, 130 Ind.App. 611, 159 N.E.2d 291 (1959). Indiana law provides the following formal requirements to establish a trust:
 
 
 43
 (a) A trust in either real or personal property is enforceable only if there is written evidence of its terms bearing the signature of the settlor or his authorized agent.
 
 
 44
 (b) Except as required in the applicable probate law for the execution of wills, no formal language is required to create a trust, but its terms must be sufficiently definite so that the trust property, the identity of the trustee, the nature of the trustee's interest, the identity of the beneficiary, the nature of the beneficiary's interest and the purpose of the trust may be ascertained with reasonable certainty.
 
 
 45
 IND.CODE 30-4-2-1; see also Pavy v. Peoples Bank & Trust Co., 135 Ind.App. 647, 195 N.E.2d 862 (1964).
 
 
 46
 The trust agreement establishing the Trust is incomplete in at least two respects. First, it fails to name that valuable consideration which was exchanged in the transaction. More importantly though, the trust agreement does not name the beneficiaries of the alleged Trust. The second omission is crucial in establishing the requisite fiduciary relationship essential to a trust. While the Templetons suggest that beneficiaries were named in the trust agreement, they fail to come forward with evidence, as they must to meet their burden on this issue. The party asserting the existence of a trust has the burden of proof in establishing it. Webster v. Webster, 135 Ind.App. 53, 184 N.E.2d 897 (1962); Mayfield v. Kansas City Life Ins. Co., 158 F.2d 331 (7th Cir.1946), cert. denied, 67 S.Ct. 1352 (1947).
 
 
 47
 These omissions from the trust agreement might not, on their face, compel invalidation of the Trust. Generally, a court should construe a trust agreement in favor of validity. Meyer v. Northern Indiana Bank and Trust Co., 490 N.E.2d 400 (Ind.App.1986); Hinds v. McNair, 413 N.E.2d 586 (Ind.App.1980). Under Indiana law, though, a court has equitable powers to invalidate a trust agreement when improperly executed or if circumstances surrounding its execution so warrant. IND.CODE 30-4-3-30; Matter of Walz, 423 N.E.2d 729 (Ind.App.1981); Apple v. Apple, 140 Ind.App. 529, 274 N.E.2d 402 (1971). The existence of fraud in the execution of a trust justifies invalidation of that fiduciary relationship. Ralph v. George, 78 Ind. 491, 136 N.E. 44 (1922); Ewing v. Smith, 132 Ind. 205, 31 N.E. 464 (1892). The two material omissions in the trust agreement, combined with significant evidence of fraud in this transaction, compel this court to invalidate the Templetons' attempted transfer of the Rochester property.
 
 
 48
 Indiana law on fraudulent conveyances is well-established in its principles. IND.CODE 32-2-1-14 et seq. Fraudulent intent generally is a question of fact, and no conveyance or charge will be adjudged fraudulent against creditors solely on the grounds that it was not founded on valuable consideration. U.S. Marketing Concepts v. Don Jacobs, 547 N.E.2d 892 (Ind.App.1989). Other factors must be considered. Purple v. Farrington, 119 Ind. 164, 21 N.E. 543 (1889); Pence v. Rhonemus, 58 Ind. 268, 108 N.E. 129 (1915). The character of a sale or transfer of property must be judged by the circumstances existing at the time of the conveyance and not by subsequent events having no actual connection with the transaction. Stamper v. Stamper, 227 Ind. 15, 83 N.E.2d 184 (1949); Deming Hotel Co. v. Sisson, 216 Ind. 587, 24 N.E.2d 912 (1940); Ray v. Simons, 76 Ind. 150 (1881).
 
 
 49
 While the determination of whether a conveyance was fraudulent involves the consideration of various elements and factors, certain circumstances so frequently indicate transfers to defraud creditors that they are recognized as indicia or "badges of fraud", Arnold v. Dirrim, 398 N.E.2d 442 (Ind.App.1979); Cook v. Ball, 144 F.2d 423 (7th Cir.1944), cert. denied, 323 U.S. 761 (1945), including: a debtor's transfer of property during pendency of suit; transfer of property that renders debtor insolvent or greatly reduces his estate; a series of contemporaneous transactions which strip the debtor of all property available for execution; secret or hurried transactions not in the usual mode of doing business; a transaction conducted in a manner different from customary methods; transactions whereby the debtor retains benefits over transferred property; little or no consideration in return for transfer; and transfer of property between family members. U.S. Marketing Concepts v. Don Jacobs, 547 N.E.2d at 894; Jones v. Central National Bank of St. Johns, 547 N.E.2d 887 (Ind.App.1989).
 
 
 50
 The Templetons' conduct evidences a clear intent to defraud the Internal Revenue Service in establishing the Trust and conveying their real property to that entity. As of the date of the alleged transfer, the Templetons had filed a deficient income tax statement. When the Trust was executed in November, 1982, the IRS was in the process of investigating the Templetons' 1979 tax return. Therefore, the Templetons attempted to relieve themselves of the ownership of the Rochester property during the time period when the IRS was establishing their tax liability.
 
 
 51
 The execution of the trust agreement also reeks of fraud. The Templetons sought no sizeable amount from the Trust in exchange for conveying their real property and continued to reside at that residence, paying the utility bills incurred there. The Templetons never named beneficiaries of the Trust or provided for the means of providing for such beneficiaries. Additionally, in establishing the Trust, the Templetons named three co-members of the Patriots for Liberty. All of these facts are contrary to the normal practice used in setting up a trust. Moreover, even after the alleged transfer of the Rochester property, the Templetons have continued to afford themselves of the benefit of residing there.
 
 
 52
 Evidence in the record indicates that the Templetons owned no other real estate or other significant property when the Trust was established. While the Templetons dispute Officer Forsgren's statement on this point, they have failed to come forward with evidence to the contrary. Indeed, had the Templetons owned other property, the IRS would surely have attempted to place a tax lien on that property.
 
 
 53
 The determination of the existence of fraud is normally a question of fact. IND.CODE 32-2-1-18. However, the evidence in this matter, establishing certain badges of fraud, is not genuinely in dispute. The defendants have attempted to create a fact issue by disputing the evidence well-documented in the government's submissions. But neither the Templetons nor Mr. Venegoni have supported their positions with more than legal assertions posited in the affidavits of the Templetons and the trustees. Such self-serving statements, without more, are insufficient to create genuine issues of fact in this matter.
 
 
 54
 Accordingly, this court now finds that there is no genuine issue of material fact that the November, 1982 attempt by the Templetons to convey the Rochester property to the Trust was fraudulent. That transaction, therefore, is void as a matter of law.
 
 Conclusion
 
 55
 For those reasons stated above, the court now DENIES the following motions of defendants David and Rachel Templeton: the motion to dismiss, the motion to strike Form 4340, the motion to strike Officer Forsgren's Declaration, and the motion to strike and/or for a more definite statement. The court further GRANTS the United States of America's motion for summary judgment and reduces to judgment that tax assessment made by the Internal Revenue Service against the Templetons on April 25, 1984. The court further finds that the Templetons are the equitable owners of the real property at 718 Pontiac Street, Rochester, Indiana, and that the United States is entitled to foreclose on that property in satisfaction of its tax assessment against the Templetons pursuant to 26 U.S.C. § 6321. The court also finds that the motions to dismiss of defendant Michael Venegoni are now DENIED for the reasons stated in this order.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). The Templetons and Venegoni have filed a statements regarding oral argument. Upon consideration of these statements, the briefs, and the record, the request for oral argument is denied and the appeal is submitted on the briefs and record
 
 
 [1]
 In their response to the government's summary judgment motion, the Templetons state that they owned several business and real properties during this time, but they have not documented such ownership
 
 
 [2]
 The Templetons contend that the original trust agreement named beneficiaries and the IRS' submission is only a portion of that document. The Templetons have not come forward with their version of the trust agreement. Moreover, that trust agreement submitted by the IRS has pages numbered in sequence and bears the signatures of the Templetons and trustees on the last page
 
 
 [3]
 This factual information is derived from the Declaration of Officer Forsgren. The Templetons do not dispute the trustees' (or their own) membership in this organization, but contest the significance of such information to this action
 
 
 [4]
 Mr. Venegoni has been referred to by the names Michael and Tim in this record. The court assumes that both names refer to the same person named in this cause
 
 
 [5]
 The Templetons' affidavits consist mostly of legal conclusions and are not accompanied by documentary evidence to support such conclusions
 
 
 [6]
 These affidavits of the original trustees of the Seven Eighteenth Trust are identical in both form and content. The affidavits recite various legal conclusions without suggesting their basis in fact or attachment of supporting documentation